**Carolyn ROOT, et al., Appellants,**

v.

**Robert ENGLAND, et al., Respondents.**

No. WD 70351.

Missouri Court of Appeals,
Western District.

Aug. 4, 2009.

James A. Rahm, Carrollton, MO, Attorney for Appellants, Carolyn Root, Terry L. Mabrey, and Shirley Gotmer.

Donald G. Stouffer and Joby Jason Raines, Marshall, MO, Attorneys for Respondents, Robert England, Charles "Chuck" Mabrey, and Laura Toy.

Jill Harriman Lilleman, Marshall, MO, Attorney for Respondent, Ronnie Van Buskirk.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge, and MARK D. PFEIFFER, Judge.

MARK D. PFEIFFER, Judge.

Plaintiffs appeal the judgment of the Circuit Court of Saline County, dismissing their petition to contest the validity of the will of Charles Junior Mabrey. In its judgment, the trial court concluded that appellants failed to show good cause for their failure to obtain service of process on all defendants within the statutory ninety-day period, as required by section 473.083.6, RSMo 2000.[1]

Appellants contend that the evidence established good cause for their failure to obtain service of process on all of the defendants within the statutorily prescribed time period and, consequently, the dismissal was erroneous. We agree. The judgment of the trial court is reversed and remanded with directions to reinstate the petition.

1. All statutory references are to RSMo 2000.

Charles Junior Mabrey (testator) died on March 24, 2007. His will was admitted to probate on April 17, 2007, and letters testamentary were issued on the same day to the Personal Representative of the estate and the cousin of the deceased, Charles "Chuck" Mabrey. The petition to contest the will was initiated on October 22, 2007, by plaintiffs Carolyn Root, Terry Mabrey, and Shirley Gotmer, all three of whom are siblings of the deceased. The petition named the eighteen devisees in testator's will as defendants.[2] Appellants requested issuance of summons upon the defendants simultaneously with the filing of their petition. On October 23, 2007, the Saline County clerk prepared and forwarded summons for service of process upon the defendants. The defendants, collectively, resided in seven states. Of the eighteen individuals to be served, fifteen were non-residents of Missouri, requiring service of process on defendants located in California, Arkansas, Washington, New York, Louisiana, and Oregon. Service of process upon sixteen of the eighteen individuals occurred without incident, including one of the three defendants who resided in the State of California. However, service of process for two of the California residents, Laura Toy and Joy Ayers, was delayed, in part, by procedural hurdles that the counties of Kern and Sacramento, California, imposed upon plaintiffs, in contrast to Stanislaus County, California. Further, service of process upon one of the two California defendants was further delayed by the inability of the deputy sheriff to locate the defendant after repeated visits to the defendant's home (and after leaving his business card at a visible location on defendant's residential premises). Irrespective, service of process did not occur within the statutorily required time period for these two defendants. The relevant timeline relating to service of process follows:

10/22/07—Petition filed and summonses requested for the eighteen individual defendants.

10/23/07—Summonses issued for all defendants by the Saline County Deputy Clerk, Terri Ann Zimmerman. A motion for a special process server is submitted for Jamie Moreau because the sheriff of her county of residence was not accepting general process for service.

10/24/07—Order appointing a special process server (for defendant Jamie Moreau) is filed.

10/26/07—Summonses returned served upon defendants Chuck Mabrey and Robert England, both residents of Missouri.

11/05/07—Summonses returned served upon defendants Sunny Wynn, Breezy Wynn, Sarah Crawford, and Myley Huff, all residents of Arkansas. The summons for defendant Laura Toy was returned by the sheriff of Kern County, California, to the clerk due to insufficient service fees and a failure to sign the attorney's instructions.[3] The fee in question was a $10 notary fee in addition to the service of process fee.

---

**2.** In total, nineteen individuals were named, but Charles "Chuck" Mabrey was named in both his individual capacity as a devisee and as the representative of the estate.

**3.** In the motion hearing, Ms. Zimmerman testified that she had communicated the failure to include sufficient service fees to counsel for plaintiffs but was unsure whether or not she shared that there was also a failure to sign the attorney's instructions section. The returned summons indicated "insufficient service fees" as the reason for return on the blank line indicating the reason for the return on the face of the summons. Both reasons were included in the Notice of Action document that was mailed to the Saline County clerk (i.e., not mailed to counsel for plaintiffs).

11/07/07—Summons returned served upon defendant Ronnie VanBuskirk, a resident of Missouri.

11/08/07—Summons returned served upon defendant Christy Alexander, a resident of Oregon.

11/09/07—Summons returned served upon defendant Ollie Mabrey, a resident of Stanislaus County, California.[4]

11/13/07—Summonses returned served upon defendants Cecil Mabrey and Kathy Roberts, residents respectively of Arkansas and Oregon.

11/14/07—The summons for defendant Joy Ayers was returned *non est* by the sheriff of Sacramento County, California, due to insufficient service fees.[5]

11/22/07—Thanksgiving

11/26/07—Summons returned served upon defendant Lorrie Pierce, a resident of Oregon.

11/28/07—Summons returned served upon defendant Jamie Moreau, a resident of Washington.

11/30/07—Summons returned served upon defendant Vicki Deluca, a resident of New York.

12/04/07—Summons returned served upon defendant Jody Moreau, a resident of Washington.

12/19/07—An alias summons for defendant Toy is requested and issued with the proper notary fee.

12/25/07—Christmas

12/26/07—Summons returned served upon defendant Brenda Mallory, a resident of Louisiana.

12/27/07—An alias summons is requested and issued for defendant Ayers with the additional $10 notary fee included.

1/1/08—New Year's Day

1/15/08—First alias summons for service upon defendant Toy returned by sheriff of Kern County, California, due to the fact that the attorney's instructions were not signed by the attorney.

1/17/08—A second alias summons for defendant Toy is requested and issued with the correct fees and signed attorney instructions.

1/21/08—The ninety-day deadline for service of process passes.

1/22/08—First alias summons for defendant Ayers returned *non est* by the Sacramento County sheriff, because defendant Ayers was unknown at that address.

1/28/08—A second alias summons for defendant Ayers with the corrected address is requested.

1/30/08—The second alias summons for defendant Ayers is issued.[6] Kern County deputy sheriff's first service of process attempt upon defendant Toy occurs at 2:30 p.m. There is no answer. Large dogs were in the yard. A business card was left on the gate by the deputy sheriff.

2/1/08—Kern County deputy sheriff's second service attempt on defendant Toy occurred at 10:50 a.m. There is no answer and the business card is still on the gate of Toy's residence.

---

4. The sheriff of Stanislaus County apparently did not require an extra notary fee of $10, nor did said sheriff require the attorney's signature on the instructions section.

5. There was no mention in this returned service form of failure to sign attorney instructions.

6. At the motion hearing, Carolyn Root testified that she had received the incorrect address from Ms. Ayers' mother, Pat Mabrey, and that she had to wait until Ms. Mabrey returned from a trip to Mexico to communicate that the address was wrong. Ms. Mabrey then instructed Ms. Ayers to call and provide Ms. Root with the correct address.

2/4/08—Kern County deputy sheriff's third service attempt on defendant Toy occurred at 9:38 a.m. There was no answer and the deputy's business card was gone.

2/11/08—Second alias summons for defendant Ayers returned by the Sacramento County sheriff, because, although the address was now accurate, the service instructions were not signed, a new procedural flaw identified for the first time by the Sacramento County sheriff.

2/19/08—Second alias summons for defendant Toy returned *non est* by the Kern County Sheriff fifteen days after the third delivery attempt failed.

2/21/08—A third alias summons for defendant Ayers is issued, with the correct address, correct fees, and attorney instructions signature, all of which were defects that were separately enumerated by the Sacramento County sheriff's department by way of notification to plaintiffs one defect at a time for each of the three previous summonses submitted to Sacramento County.

2/27/08—Plaintiffs seek application for appointment of a special process server (for defendant Toy) and an order appointing a special process server is granted by the trial court. None of the defendants object to the appointment of a special process server or seek to have the trial court's order appointing a special process server vacated at any time.

3/5/08—Summons (via special process server) is served upon defendant Toy in Kern County, California.

3/17/08—Summons returned served for defendant Toy.

3/18/08—Third alias summons served upon defendant Ayers in Sacramento County, California.

3/24/08—Summons returned served upon defendant Ayers.

8/11/08—Motion to Dismiss filed by defendant VanBuskirk.

9/4/08—Motion to Dismiss filed by defendants England, Charles "Chuck" Mabrey, and Toy.

9/9/08—The trial court received evidence and considered arguments of counsel relating to the issue of whether good cause existed for the failure of the plaintiffs to obtain service of process upon all eighteen defendants within the statutorily prescribed time period.

10/6/08—The trial court sustained the motions to dismiss, after which an appeal was timely filed by the plaintiffs.

■ We review the trial court's finding that the plaintiffs did not show good cause for failing to obtain service of process upon all of the defendants within ninety days after the petition was filed for abuse of discretion. *Cole v. Smith*, 370 S.W.2d 307, 309–10 (Mo. banc 1963); *Anderson v. Wittmeyer*, 834 S.W.2d 780, 782 (Mo.App. W.D.1992). In determining whether the trial court abused its discretion in dismissing the underlying petition, we recognize the public policy of Missouri that "a contest of a will admitted to probate shall be expeditiously prosecuted or not at all." *Kane v. Mercantile Trust Co. Nat'l Ass'n*, 513 S.W.2d 362, 365 (Mo. banc 1974). However, a trial court's discretion must always be guided by the principle that such discretion should be exercised in a manner that serves the ends of justice, *Horobec v. Mueller*, 628 S.W.2d 942, 944 (Mo.App. E.D.1982), and further, a trial court's discretion in this setting must also recognize Missouri law favoring disposition of a case on the merits when possible. *Givens v. Highland Diversified, Inc.*, 850 S.W.2d 107, 109 (Mo.App. E.D.1993).

Service of process in a will contest case is governed by section 473.083.6:

In any such action the petitioner shall proceed diligently to secure and complete service of process as provided by law on all parties defendant. If service of process is not secured and completed upon all parties defendant within ninety days after the petition is filed, the petition, on motion of any defendant duly served upon the petitioner or his attorney of record, *in the absence of a showing by the petitioner of good cause* for failure to secure and complete service, shall be dismissed at the cost of the petitioner.

(Emphasis added.)

■ Missouri courts have recognized three evidentiary guidelines for establishing "good cause": 1. Proof that demonstrates difficulties in obtaining service of process. 2. Proof demonstrating circumstances which impede timely service of process or which prevent service of process in its entirety. 3. Proof that such impediments to service of process are attributable to persons and things beyond the control of the plaintiff. *Collier v. Dunne,* 712 S.W.2d 38, 40 (Mo.App. E.D. 1986); *Stemmler v. Crutcher,* 677 S.W.2d 916, 919 (Mo.App. E.D.1984). While *Stemmler, Collier,* and their progeny recite the above three-pronged test as an analytical guide for litigants involved in a will contest service of process dispute, whether or not these prongs are satisfied is determined on a case-by-case basis, as is clear from a reading of *Stemmler, Collier,* and other Missouri precedent addressing the good cause savings provision of section 473.083.6. *See Cole v. Smith,* 370 S.W.2d 307; *Woodward v. Nyland,* 915 S.W.2d 361 (Mo.App. S.D.1996); *Larson v. Larson,* 818 S.W.2d 740 (Mo.App. S.D.1991); *Powell v. Ware,* 641 S.W.2d 824 (Mo.App. S.D. 1982).

In the present case, appellants contend that the facts are most analogous to *Collier v. Dunne.* Respondents counter that *Woodward v. Nyland* and *Cole v. Smith* are more on point and should control. For the reasons we discuss below, we find the facts and reasoning in *Collier* to be more persuasive to the present case.

*Collier* was a will contest case in which the plaintiff failed to serve process within ninety days. 712 S.W.2d at 39. The trial court granted a motion to dismiss and the plaintiff appealed. *Id.* At issue was whether there was good cause for plaintiff's failure to serve Hazel Storm, a defendant located in, coincidentally, the State of California. *Id.* at 40. Plaintiff's attempts at service were frustrated by insufficient service fees, *non est* returns, and inevitable delays in mailing summons to, and receiving returns of service from, out-of-state process servers. *Id.* In reversing the trial court, the appellate court commented on the multiple attempts made by the plaintiff to reach the defendant and also observed as follows:

This court is further mindful of the inherent delays with the mechanics of execution of personal service on out-of-state residents. The procedure requires that the attorney attempting personal service on an out-of-state defendant apply for the summons with the appropriate county official who then mails the summons to the attorney who in turn forwards the summons and fee to the appropriate out-of-state sheriff, causing delays along each step, which in this case were not the fault of appellant's attorney.

*Id.* at 41.

In *Woodward,* the plaintiff's efforts to serve process were frustrated by the clerk of the court sending the summons on the incorrect form. 915 S.W.2d at 362. The plaintiff, however, was placed on notice of this procedural flaw when the defendant moved to quash service. *Id.* at 362–63.

Plaintiff requested an alias summons two weeks later. *Id.* at 363. The alias summons was returned *non est* because the defendants were wintering in Arizona. *Id.* Instead of making any effort to serve the defendant in Arizona, either by publication or personal service, the plaintiff's efforts at service of process were simply postponed by the plaintiff for approximately six weeks until the plaintiff believed the defendant had returned to Colorado. *Id.*

The trial court sustained the defendants' motion to quash the initial service[7] and sustained a motion to dismiss based upon failure to serve process within ninety days. *Id.* On appeal, the court noted plaintiff's failure to attempt a different method of service of process during the six weeks defendants were in Arizona and their failure to check on service while the ninety days expired. *Id.* at 365. The court in *Woodward* observed in its decision that, "In that regard, we note that by February 21, 1995, when the Colorado sheriff sent the second set of summonses back to the circuit clerk unserved, more than ninety days had passed since the petition was filed. Yet, plaintiff waited another thirty-seven days to launch another attempt at service." *Id.* at 364–65. The *Woodward* court also notably evaluated the plaintiff's service of process efforts in the context of contested service of process by the defendant. As the court noted:

> Defendant's motion of December 23, 1994, should have alerted Plaintiff that Defendant intended to hold Plaintiff to the requirement that service be made within the allotted ninety days. Considering Plaintiff's languid approach toward

obtaining service following that warning, we cannot convict the trial court of abusing its discretion in holding that Plaintiff showed no good cause ...
*Id.*

In *Cole*, the plaintiffs were prosecuting a will contest case in which they failed to even *attempt* personal service of process on two of the necessary defendants, even though the addresses for the defendants were in the court record. *Cole*, 370 S.W.2d at 307–08. Plaintiffs contend that they could not locate the addresses for these defendants, even though both defendants were listed in the phone book and both addresses were included in the application for letters testamentary. *Id.* at 308. Instead, after minimal effort by the secretary of plaintiffs' counsel (and with little or no guidance from counsel for plaintiffs) to locate the two defendants in question, plaintiffs filed affidavits for service by publication stating that the whereabouts of the defendants were *unknown*. *Id.* Service by publication was not completed within the sixty days that the statute provided for service.[8] *Id.* at 309. Defendants moved to have the case dismissed and the trial court sustained the motion. *Id.* at 308. In affirming the trial court, the Missouri Supreme Court noted that there was no good cause for plaintiffs' counsel (or his delegated employee) to fail to examine the probate court's file or call the probate clerk to obtain the address information for the subject defendants, only then to later complain that the addresses could not be found with reasonable diligence. *Id.* at 309.

■ In the spectrum of diligence between the actions of the plaintiffs in *Col-*

---

7. The *Woodward* court also pointed out that plaintiff may have been able to achieve effective service of process by seeking leave to permit the deputy sheriff to amend the return on the original summons, but the plaintiff never sought such a remedy from the trial

court. *Woodward v. Nyland*, 915 S.W.2d 361, 365 (Mo.App. S.D.1996).

8. At the time of the *Cole* case, the statute allowed sixty days for service of process instead of ninety days.

*lier, Woodward,* and *Cole,* we find the diligence of appellants in the instant case to be very similar to the plaintiff in *Collier.* For example:

- Appellants did not have the task of serving one defendant or even one nonresident defendant. Rather, the task of the appellants was to serve eighteen defendants in seven states.
- Appellants did not delay in their challenge of serving eighteen defendants in seven states, but rather, simultaneously requested that the clerk issue summonses on the same day that the petition was filed. Appellants also promptly and proactively requested a special process server for one of the Moreau defendants when they were informed that the sheriff of the county of said defendant's residence could not timely perform service of process.
- Appellants properly utilized the address information publicly available to them to provide the clerk with the necessary data to issue summonses to all eighteen defendants. When it became apparent that address information was incorrect for defendant Ayers, appellants obtained the proper address information and communicated that to the clerk in a timely fashion.
- Within sixty-five days, appellants had succeeded in obtaining service of process on sixteen of the eighteen defendants, including successful service of process upon defendants located in Missouri, Arkansas, Washington, New York, Louisiana, Oregon, and most notably, *California.*
- In the State of California, appellants received a mixed-bag interpretation of procedural commentary and application from the sheriff's departments of Stanislaus, Sacramento, and Kern counties. In Stanislaus County, the original summons was deemed sufficient (i.e. without a separate notary "service" fee and without signed instructions from the attorney) and service of process was obtained on the defendant from Stanislaus County. In Sacramento County, first the sheriff returned the summons for failure to pay the separate $10 notary fee. Then, on the first alias summons, the Sacramento County sheriff returned the summons for having an incorrect service address for the defendant. Then, on the second alias summons, the Sacramento County sheriff returned the summons for failing to have signed attorney instructions, a defect not previously enumerated by the sheriff. Finally, on the third alias summons, service of process is obtained on the Sacramento County defendant. In Kern County, a similar scenario unfolds with the sheriff's department, in that the first summons is returned due to lack of an additional $10 service fee, the second summons is returned due to failure to have signed attorney instructions on the summons, and the third summons is returned after three failed service attempts at the residential address of the Kern County defendant (although the sheriff waited two weeks to return the *non est* summons). Finally, appellants' counsel sought an order appointing a special process server for the Kern County defendant and, with no objection from any of the defendants, the trial court issued the order appointing a special process server and the process server obtained service on the Kern County defendant shortly thereafter.
- Between the Sacramento County and Kern County defendants located in the State of California, counsel for appellants requested seven summonses and

the appointment of a special process server.

- Appellants obtained service of process on all eighteen defendants from seven states within five months.
- Although sixteen of the eighteen defendants were served within the ninety-day deadline, no defendants asserted a motion to dismiss *before* service of process upon *all* of the defendants, and instead, the respondents herein filed their motions to dismiss in August and September, some five months *after* service of process upon all defendants and *after* said respondents had propounded written discovery to appellants.

Applying previously cited case precedent to the topic of good cause, we find that the overwhelming weight of the evidence supported a finding of good cause for the failure of appellants to obtain service of process within ninety days, in that:

1. The evidence clearly demonstrates significant difficulties in obtaining service of process on two of the eighteen defendants residing in California. The legal record demonstrates that the plaintiffs below sought service upon these defendants via summons, first alias summons, second alias summons, third alias summons, and even the appointment of a special process server. Throughout these difficulties, though, counsel for the appellants never gave up and, ultimately, succeeded in obtaining service upon the defendants.

2. The evidence clearly demonstrates circumstances which impeded timely service. Although counsel for appellants undoubtedly used the same form of service of process for defendant Ollie Mabrey, a resident of Stanislaus County, California, service of process was achieved via the original summons within sixteen days of the issuance of the original summons. To the contrary, the defendants from Kern County and Sacramento County, California, involved multiple procedural hurdles relating to additional $10 notary fees, attorney instructions signature requirements, an incorrect address, multiple failed attempts at serving one of the defendants and a two-week delay by the sheriff in providing notice of failed service, and finally, the appointment of a special process server to complete service. The service of process futility with these two defendants is evident from any reasonable review of the record and appellants met their burden of demonstrating proof that there were circumstances impeding timely service of process, though their attorney, a solo practitioner juggling the rigors of a solo practice with a complicated service of process matter and three national holidays, was exercising diligence to pursue his clients' claims.

3. Finally, appellants have demonstrated that impediments to service of process were attributable to persons and things beyond the control of appellants and their counsel. While it is not sufficient excuse to claim good cause due to the fact that one or more of the defendants to be served is a non-resident defendant, this court recognizes that there is the greater likelihood for delays caused by the mechanics of execution of personal service on out-of-state defendants. This case is a perfect example ... a tale of three counties if you will. Stanislaus County, California, accepts the original summons and obtains service on the Stanislaus

County defendant within two weeks of issuance of the summons. Kern County, California, rejects multiple summonses (after the inevitable delay in each mailing of an original, first alias, and second alias, to and from Kern County) for notary fees and attorney signatures that Stanislaus County chose to disregard. Then, after receiving a summons it was willing to serve, the deputy sheriff of Kern County failed on three attempts to serve the Kern County defendant that a special process server later had little difficulty in serving. The Kern County deputy sheriff does make note of suspicious circumstances of his business card missing from the well-guarded gate of the Kern County defendant (by large dogs) on his third failed attempt. Irrespective, the Kern County deputy sheriff waits two weeks before providing the bad news to the appellants in the form of a *non est* return of service on the second alias summons. Sacramento County, California, not only piecemeals its rejection of two summonses for procedural grounds, but then rejects it a third time for an insufficient address, requiring four summonses before service of the summons appears to have been obtained without incident. Given the conflicting application of service of process procedures in these three counties from California, the coincidence that one of the defendants was not at home on three separate occasions, the typical mailing delays for out-of-state service of process, and the specific delay of one of the California deputies in failing to promptly return the failed service of process, we believe appellants clearly and unequivocally met their burden of demonstrating that the impediments to service of process were attributable to persons and things beyond their control and cannot reasonably be claimed to be the fault of appellants or their counsel.

In their brief, respondents encourage a confined interpretation to the savings provision of section 473.083.6, in which they argue that, if any delay in service of process can *possibly* refer to attorney error, there can be no showing of good cause by such attorney or said attorney's clients for the delay in service of process. The case precedent does not support this proposition. We do not support this proposition. And, the savings provision in section 473.083.6 does not contemplate such a proposition. Instead, the time standard and savings provision both contemplate *reasonable diligence* in the process of serving all defendants in a will contest proceeding. Appellants and their counsel have demonstrated reasonable diligence. They succeeded in serving sixteen defendants in seven states within sixty-five days. Then, when service of process attempts failed on two defendants, they did not give up. They sought multiple alias summonses and the appointment of a special process server. In all, appellants submitted eight attempts at service of process for the two late served defendants. One of those service attempts resulted in three failures of service of process by a deputy sheriff and a failure by the deputy sheriff to timely notify the parties of his multiple failed attempts at service of process. The record of this case demonstrates the reason for the savings provision of section 473.083.6; that is, an opportunity to prove that, albeit reasonable and diligent efforts, service of process could not be achieved within ninety days. There is little or no application for the savings provision if it

cannot be invoked by the fact pattern of this case.

While not controlling, it should also be noted that the policy behind the time standard statutory framework of section 473.083.6 can hardly be claimed to apply to the fact pattern of this case. Section 473.083.6 requires that any or all parties defendant under a will contest proceeding who wish to initiate the lack of service of process defense of section 473.083.6 do so by filing a motion. And yet, although the respondents are quick to point out the untimely service of process by appellants, respondents waited approximately five months *after* all the defendants had been successfully served before any motions to dismiss were filed.[9] While there is no statutory requirement that a will contest defendant file a motion to dismiss immediately after the ninety-day service of process deadline has expired, courts have found the timing of filing such a motion to dismiss relevant in evaluating the reasonableness of a plaintiff's pursuit of service of process. *Woodward,* 915 S.W.2d at 365. In other words, if a defendant is zealously asserting the ninety-day rule soon after the same has expired, the courts have recognized that a prompt response is required of the plaintiff to have any chance to prevail on the topic of establishing good cause for any delay in service of process. *Id.* In the underlying case, the respondents did not assert motions to dismiss until long after service of process had been completed upon all of the defendants and written discovery had commenced. In fact, only four of the eighteen individual defendants ever filed motions to dismiss. Three of the four movants below were served within two weeks of the filing of the petition to contest the will and waited approximately seven months after the ninety-

day deadline to move for dismissal. These uncontroverted facts lend additional credence to the fact that, without the threat of a pending motion to dismiss, the plaintiffs and their counsel below consistently, reasonably, and diligently worked on achieving service of process on all of the defendants as expeditiously as the circumstances would permit.

In sustaining the motion to dismiss, the trial court relied on incorrect facts and did not address key considerations in weighing the evidence. A careful reading of the court's docket sheet shows that the initial summons for defendant Ayers was returned on November 14, 2007; however, the findings of fact in the judgment of dismissal state that the summons was returned on November 5, 2007. While the record clearly shows that plaintiff's counsel requested and received an alias summons for defendant Ayers on December 27, 2007, the judgment of dismissal misses this important fact and incorrectly concludes that appellants did not request the first alias summons until January 30, 2008. While the plaintiffs did request an alias summons on January 30, 2008, this was the second alias summons, not the first. These errors meant that when the trial court evaluated the facts of the case, it found that "Plaintiffs waited eighty-six (86) days between the return of the first summons to Joy Ayers and the subsequent request of an Alias Summons." Thus, the trial court's judgment rests in part upon a scenario incorrectly concluding that the plaintiff delayed seeking the first alias summons for a time period twice as long as the actual record reflects and, thereby, erroneously characterizes plaintiffs' counsel as utilizing half the effort that the actual record reflects. It is an understandable error, given the volume of sum-

9.   Respondents' counsel stated during oral argument that the reason for the delay in filing the motion to dismiss was due to the press of other business in his office.

monses being dispatched back and forth to California, but the fact that the trial court made the error shows the complexity of service in this case and highlights the efforts required of plaintiffs' counsel. The error, however, means that the decision to sustain the motion to dismiss rests on an inaccurate and incomplete factual foundation.

While the trial court acknowledges that the "number of Defendants in this case mitigates in favor of the plaintiffs," it does not recognize the full extent of the challenges facing plaintiffs' counsel. Instead, the trial court concludes that the failure to serve defendants Toy and Ayers "was due *solely* to Plaintiffs' failure to send the service fees and service instructions to the Sheriffs of Kern and Sacramento Counties in California." (Emphasis added.) This conclusion is both clearly erroneous and fails to acknowledge:

- The failure of the Kern County sheriff to serve defendant Toy after three service attempts and then waiting two weeks to notify the court of such failure, none of which is the fault of the plaintiffs. This difficulty required plaintiffs' counsel to apply for a special process server, an application which was not contested by opposing counsel and ordered by the trial court, even though the ninety-day window had already expired.
- The delay in locating defendant Ayers' address when the correct address was not included in the letters testamentary and defendant Ayers' own mother did not possess a correct address for her.
- The dilatory and piecemeal communication of requirements for service and failed service attempts by Sacramento and Kern counties. Based upon this court's calculations, plaintiffs spent over ninety-two days of attempts at service of process, well over two-thirds

of the period in question, waiting upon Sacramento or Kern county to either serve the summons or inform them why it was unable to be served. This is in noted contrast to Stanislaus County, which promptly served the summons as originally issued and worded.

In failing to recognize the totality of these delays and impediments, the trial court did not properly consider all of the challenges facing the plaintiffs. And, while the trial court correctly noted that the number of defendants should have mitigated in favor of the plaintiffs, another important factor that the trial court should have recognized was the number of out-of-state defendants. It is the *location* of the defendants that the court found dispositive in *Collier*, and it was the *location* of the defendants, in addition to the number, that provided the barriers in the instant case. By failing to factor in the weight of evidence demonstrating the "inherent delays" that come from service of process on fifteen out-of-state defendants in six states outside of Missouri, the trial court neglected to give due consideration to the substantial hurdle that the plaintiffs had to overcome. Consequently, the trial court's finding that there was not good cause for plaintiffs' failure to serve all eighteen defendants in ninety days is clearly erroneous, and the trial court abused its discretion in sustaining the motion to dismiss. Therefore, the judgment of the trial court is reversed and remanded with instructions to reinstate the appellants' petition to contest the will and for further proceedings thereon.

VICTOR C. HOWARD, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.